**LINDEMANN LAW FIRM, APC**
BLAKE J. LINDEMANN, SBN 255747
9777 Wilshire Blvd., 4th Floor
Beverly Hills, CA 90212
Telephone:  (310)-279-5269
Facsimile:  (310)-300-0267
E-mail:      blake@lawbl.com


*Attorneys for Plaintiff Ashley Felton*
*and the Proposed Classes*


## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHLEY FELTON, an individual, and all those similarly situated;<br><br>Plaintiffs,<br><br>v.<br><br>EVOLVE BANK & TRUST, an Arkansas bank; EVOLVE BANCORP, INC., an Arkansas limited liability company; AMG NATIONAL TRUST, a Colorado bank; LINEAGE BANK, a Tennessee bank; and AMERICAN BANK, Inc. a Pennsylvania bank.<br><br>Defendants. | Case No.<br><br>**PLAINTIFF'S CLASS ACTION COMPLAINT** |

## I.    INTRODUCTION

1.    This is a case about a bank that utterly failed in its most basic duty to its customers, misappropriating, failing to account for and earmark, and/or misplacing tens of millions of dollars in customer deposit funds.[1]  At least $85,000,000 in customer funds are missing, as reported by trustee Jelena McWilliams in the Chapter 11 Bankruptcy Case of *Synapse Financial Technologies, Inc.*, ("Synapse"), Case No. 1:24-bk-10646-MB, which is venued in the Central District of California.

## II.    PARTIES

2.    Plaintiff Ashley Felton ("Felton"), is and at all relevant times, has resided in the County of Milwaukee, State of Wisconsin.

3.    Defendant Evolve Bank & Trust is a bank organized under the laws of Arkansas with locations in California. Its corporate headquarters is located at 6000 Poplar Avenue, Suite 300, Memphis, Tennessee, 38119.

4.    Defendant Evolve Bancorp, Inc. is a bank holding company organized under the laws of Arkansas whose corporate headquarters is located at 6000 Poplar Avenue, Suite 300, Memphis, Tennessee, 38119.  Evolve Bank & Trust and Evolve Bancorp, Inc. are collectively referred to hereinafter as "Evolve."

5.    Defendant AMG National Trust is a bank holding company organized under the laws of Colorado whose corporate headquarters is located at  6295 Greenwood Plaza Blvd, Greenwood Village, CO 80111.

6.    Defendant Lineage Bank is a bank holding company organized under the laws of Tennessee whose corporate headquarters is located at 3359 Aspen Grove Drive Franklin, TN 37067.

---

[1] *In re Evolve Bancorp*, Docket Nos. 24-012-B-HC, 24-012-B-SM (Fed. Rsrv. Sys. June 7, 2024), available at https://www.federalreserve.gov/newsevents/pressreleases/enforcement20240614a.htm.

7.      Defendant American Bank is a bank holding company organized under the laws of Pennsylvania whose corporate headquarters is located at 4029 W Tilghman St Allentown, PA 18104-0. (AMG, Lineage, and American are collectively referred to hereinafter as the "Bank Defendants").  Unserved defendant is not being joined directly as a party to this case at present due to the automatic stay is in bankruptcy case number, but has filed in the Central District of California Bankruptcy Court based on the location of its principal business.

## III.    JURISDICTION AND VENUE

8.      Venue is proper in this Court because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred here, a substantial part of the property that is the subject of this action is situated here, and Defendants are subject to personal jurisdiction in this District.

9.      Defendant Evolve is subject to the jurisdiction of this Court. Evolve has been engaged in continuous and systematic business in California. In fact, many of Evolve's business activities originate from California.

10.     Evolve has committed tortious acts in this State.

11.     Each of the Defendants named herein acted as a co-conspirator, single enterprise, joint venture, co-conspirator, or alter ego of, or for, the other Defendants with respect to the acts, omissions, violations, representations, and common course of conduct alleged herein, and ratified said conduct, aided and abetted, or is other liable. Defendants have agreements with each other.

12.     Defendants, along with unnamed Director co-conspirators, were part of the leadership team that participated with Evolve, and made decisions regarding products, services, marketing strategy, bank accounts, inducements and other matters. In addition, Defendants and unnamed coconspirators were directly and actively involved in decisions to develop and amend the compensation plans. Plaintiff is presently unaware of the true identities and capacities of fictitiously named Defendants designated as DOES 1 through 10 but will amend this complaint

or any subsequent pleading when their identities and capacities have been ascertained according to proof. On information and belief, each and every DOE defendant is in some manner responsible for the acts and conduct of the other Defendants herein, and each DOE was, and is, responsible for the injuries, damages, and harm incurred by Plaintiff. Each reference in this complaint to "defendant," "defendants," or a specifically named defendant, refers also to all of the named defendants and those unknown parties sued under fictitious names.

13.    Plaintiff is informed and believes, and thereon alleges that, at all times relevant hereto, all of the defendants together were members of a single association, with each member exercising control over the operations of the association. Each reference in this complaint to "defendant," "defendants," or a specifically named defendant, refers also to the above-referenced unincorporated association as a jural entity and each defendant herein is sued in its additional capacity as an active and participating member thereof. Based upon the allegations set forth in this Complaint, fairness requires the association of defendants to be recognized as a legal entity, as the association has violated Plaintiff and Class Members' legal rights.

14.    Plaintiff is further informed and believes and thereon alleges that each and all of the acts herein alleged as to each defendant was authorized and directed by the remaining defendants, who ratified, adopted, condoned and approved said acts with full knowledge of the consequences thereof, and memorialized the authority of the agent in a writing subscribed by the principal.

15.    Plaintiff is informed and believes and thereon alleges that each of the defendants herein agreed among each other to commit the unlawful acts (or acts by unlawful means) described in this Complaint.

16.    The desired effect of the conspiracy was to defraud and otherwise deprive Plaintiff and Class Members (as hereinafter defined) of their constitutionally protected rights to property, and of their rights under other laws as set forth herein. Each of the defendants herein committed an act in furtherance of the agreement.

Injury was caused to the Plaintiff and Class Members by the defendants as a consequence.

## IV.    FACTS

17.    Evolve provides custodial and affiliate services to several institutions and companies including without limitation Synapse, Yotta, co-defendants in this case, Wells Fargo Bank, N.A., and others ("Affiliate").

18.    Evolve is a financial institution that has worked with Synapse, and has committed to reconciling hundreds of millions of transaction records to reconstruct user balances affected by the Synapse bankruptcy.

19.    Evolve also acknowledges – but does not explain – that a substantial amount of customer money is missing. In filings submitted in connection with the Synapse bankruptcy, the trustee reports a "shortfall" totaling tens of millions of dollars.

20.    Evolve and Synapse conspired to take the monies, in violation of responsible banking practices and basic morality.

21.    Long prior to the collapse of Synapse, Evolve debited customer accounts for over $25 million according to Synapse's records. These transactions were never authorized by customers.

22.    Evolve had no right to take this money from customers and never informed its customers that it was doing so. Although Synapse and Evolve purported to report all transactions involving customer funds, they concealed these transactions from its customers. They also inflated the account balances that they reported to its customers to make it appear as if the misappropriated funds remained in customers' accounts.

23.    According to Synapse's records, Evolve and Synapse also misappropriated almost $50 million in customer money in connection with "migrating" another fintech company from Synapse's software to Evolve's software.

24.     Apparently, Evolve and Synapse were aware of this missing money (and more) by at least September of 2023. Despite this, they never told its customers that their money was missing. To the contrary, they continued to represent that all customer money was available and that customers could safely deposit more into the financial black hole that was Evolve.

25.     Had Plaintiff known the truth about Evolve's malfeasance, it never would have done business with Evolve, and customers would have been spared a brutal theft at the hands of this bank.

## IV.     CLASS ACTION ALLEGATIONS

26.     Plaintiff brings this action as a class action under Fed. R. Civ. Proc. 23(b)(2) and Fed. R. Civ. Proc. 23(b)(3) and L.R. 23-2.

27.     Pursuant to Fed. R. Civ. Proc. 23, Plaintiff seeks certification on behalf the following class(es), and as amendment to the class definition may be necessitated:

28.     **National Class**: All individuals nationwide who have deposited funds with Evolve-affiliated or Evolve-titled and/or designated depository accounts (the "Class").

29.     Excluded from the Class are Defendants themselves, any entity in which Defendants have a controlling interest, and Defendants' officers, directors, legal representatives, successors, subsidiaries, assigns, and/or plaintiff's counsel. Also excluded from the Class are any judicial officer presiding over this matter, members of their immediate family, members of their judicial staff, and any judge sitting in the presiding court system who may hear an appeal of any judgment entered.

30.     **Risk of Inconsistent or Varying Adjudications**. As the proposed class members include tens, if not hundreds, of thousands of customers, there is significant risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for

Defendants. For example, injunctive relief, provisional relief, temporary restraining order, the appointment of a custodian and/or receiver, restraining orders, and other relief, may be entered in multiple cases, but the ordered relief may vary impacting central administration of the funds. Class action status is also warranted because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class that, as a practical matter, would be dispositive of the interests of other members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

31. **Numerosity**. The members of the Class are so numerous that the joinder of all members is impractical. While the exact number of class members is unknown to Plaintiff at this time, thousands of customers are impacted.

32. **Commonality and Predominance**. This action involves common questions of law and fact that predominate over any questions affecting individual class members. The common questions include, but are not limited to:

a. Whether Defendants are insolvent and/or unable to return customer funds and/or unable to credit customer accounts for deposits;

b. Whether Defendants omitted or misrepresented material facts regarding the lack of FDIC coverage;

c. Whether Defendants failed to take adequate and reasonable measures to ensure fiduciary compliance with partner accounts and transactions;

d. Whether Defendants failed to take available steps to prevent and stop the run on online affiliated partners;

e. Whether Defendants had adequate computer systems, accounting measures, and security practices to safeguard customer funds;

f. Whether Defendants owed duties to Plaintiffs and class members to protect their funds;

g.    Whether Defendants owed a duty to provide timely and accurate notice of their financial struggles, insolvency, or other issues concerning the inability to account to class members;

h.    Whether Defendants breached their duties to protect the funds of Plaintiffs and class members by failing to keep appropriate funds on hand;

i.    Whether Defendants was negligent, reckless or intentionally indifferent in its representations and conduct to Plaintiffs and class members concerning its security protocols, banking practices, and regulation and oversight of contracting partners;

j.    Whether Defendants' conduct and practices described herein amount to acts of intrusion upon seclusion;

k.    Whether Defendants was negligent in making misrepresentations to Plaintiffs and class members;

l.    Whether Defendants' conduct amounted to violation of state and federal laws;

m.    Whether, as a result of Defendants' conduct, Plaintiffs and class members face a significant threat of harm and/or have already suffered harm, and, if so, the appropriate measure of damages to which they are entitled;

n.    Whether, as a result of Defendants' conduct, Plaintiffs and class members are entitled to the appointment of a receiver, the appointment of a custodian, injunctive, equitable, declaratory and/or other relief, and, if so, the nature of such relief;

o.    Whether Plaintiffs and class members are entitled to compensatory damages;

p.    Whether the Plaintiffs and class members are entitled to punitive damages and/or exemplary relief; and

q.    Whether the Plaintiffs and class members are entitled to statutory damages, interest and penalties.

PLAINTIFFS' CLASS ACTION COMPLAINT

33. **Typicality**. Plaintiffs' claims are typical of other class members' claims because Plaintiffs and class members were subjected to the same allegedly unlawful conduct and damaged in the same way.

34. **Adequacy**. Consistent with Rule 23(a)(4), Plaintiff is an adequate representatives of the Class. Plaintiff is a member of the Class. Plaintiff has no conflicts of interest with the Class. Plaintiff's counsel is competent and experienced in litigating class actions. Plaintiff intends to vigorously prosecute this case and will fairly and adequately protect the interests of the Class.

35. **Superiority**. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The purpose of the class action mechanism is to permit litigation against wrongdoers even when damages to individual plaintiffs and class members may not be sufficient to justify individual litigation. Here, the damages suffered by Plaintiffs and the class members are relatively small compared to the burden and expense required to individually litigate their claims against Defendants, and thus, individual litigation to redress Defendants' wrongful conduct would be impracticable. Individual litigation by each class member would also strain the court system. Moreover, individual litigation creates the potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

36. **Injunctive and Declaratory Relief**. Class certification is also appropriate as an injunctive relief measure. Defendants, through their uniform conduct, acted or refused to act on grounds generally applicable to the Class as a whole, making injunctive and declaratory relief appropriate to the Class as a whole. Moreover, Defendants continues to maintain their inadequate banking practices, retains possession of Plaintiffs' and the class members' funds, and have not been

PLAINTIFFS' CLASS ACTION COMPLAINT

forced to change their practices or to remit funds to customers by nature of other civil suits or government enforcement actions, thus making injunctive and declaratory relief a live issue and appropriate to the Class as a whole.

## V.    CLASS ACTION COUNTS

### COUNT ONE

### COMMON LAW FRAUD

### (*Against the Evolve Defendants Only*)

37.    Plaintiff repeats and realleges the allegations set forth in paragraphs above as though fully set forth herein.

38.    Defendant made intentional representations of fact to Plaintiff, publicly,  to related parties, and to the Class.

39.    These representations included:

•   Essentially continuous representations, from 2020 to May 11, 2024 that each and every transaction that Evolve effected was being reported to customers and end users on an essentially real-time basis;

•   Essentially continuous representations, from 2020 to May 11, 2024 as to the essentially real-time account balances of customers;

•    Bi-weekly oral representations, from late 2022 to early 2023 delivered by Evolve employees at Compliance Check-in meetings that there were no serious compliance issues or risk management problems impacting the availability of user funds;

•   Written representations, delivered via email on September 24, 2020 that Evolve "[e]nsures clients meet regulatory, compliance and risk mitigation requirements for all solutions," that Evolve "enforce[s] federally mandated regulations," and that its technology team "[t]ediously test[s] and analyze[s] solutions before going live;"

- Written representations, posted on the Evolve website that Evolve's systems are "highly secure" and that user "data is stored, and money is transferred at the highest industry standard set by the Federal Reserve;"

- Oral representations by Evolve's Chairman Scot Lenoir on or about September 24, 2020, April 13, 2021, August 24, 2021, October 24, 2022, December 7, 2022, that Evolve had the organizational and technical ability to safeguard user funds;

- Written representations by Hank Word, Evolve's President of Open Banking on or about September 25, 2023 that problems with Synapse were merely the result of "some contractual issues with Synapse" that were "being handled" in a manner that would "protect end users;"

- Written representations by Lenoir, on or about October 3, 2023, that problems with Synapse were merely the result of "some contractual issues with Synapse," and that Affiliate could "transition to another bank" should it or its users desire to do so;

- Written representations by Evolve's outside counsel, Jeffrey P. Naimon of Orrick, Herrington & Sutcliffe LLP on or about November 2, 2023, that problems with Synapse were merely the result of "contractual disagreement that has occurred between Evolve and Synapse Financial Technologies, Inc." that could plausibly be resolved "in the next few weeks;"

- Evolve's written representation on or about May 11, 2014 that it was "maintain[ing] the integrity and security of end user accounts."

- Evolve's May 11, 2023 draft customer agreement's representation that customers could withdraw funds that they had deposited into their accounts.

40.     These representations were material and Plaintiff relied on them. Plaintiff would not have agreed to use Plaintiff as a banking partner or recommend that its customers entrust their assets to Plaintiff absent these representations.

41.     These representations were false. In truth:

- The supposedly comprehensive continuous reporting of transactions transmitted by Evolve to Affiliate were false, as funds had secretly been misappropriated;

- The account balances were false and Affiliate user funds were not genuinely accounted for and available from Evolve;

- There were serious compliance issues and risk management problems impacting the availability of Affiliate user funds;

- Evolve did not have the organizational and technical ability to safeguard user funds;

- Evolve did not ensure that its clients met regulatory, compliance and risk mitigation requirements for all solutions, did not enforce federally mandated regulations and its technology team did not tediously test and analyze solutions before going live;

- Evolve's systems were not highly secure, user data was not stored, and money was not transferred at the highest industry standard set by the Federal Reserve;

42.     The problems with Synapse that impacted availability of interest payments in September of 2023 were not the result of a "contractual disagreement," made it impossible for users to "transition to another bank" and could not possibly be "resolved in a few weeks."

43.     Evolve knew that its representations were false, material, and would be relied upon by Plaintiff in deciding to use Evolve as a banking partner and trusted custodian of its customer's money.

44.    To the extent any of Evolve's representations were not literally false, they were materially misleading and incomplete in light of Evolve's prior statements and Evolve had a duty to correct them and/or not to use them to perpetrate a fraud by omission.

45.    If Plaintiff had known that Defendant was a dishonest and incompetent bank that could not perform the most basic job of a financial institution (i.e. keeping track of customer money) it would have immediately ceased all business with Defendant and taken steps to ensure that customer funds were immediately returned.

46.    Plaintiff has been damaged by Defendant's false representations.

47.    Defendant's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Plaintiff, entitling Plaintiff to punitive damages.

48.    Accordingly, the Court should award damages against Defendant for fraud in an amount to be proven at trial.

## COUNT TWO

## CONSPIRACY TO COMMIT FRAUD

### (*Against the Evolve Defendants Only*)

49.    Plaintiff repeats and realleges the allegations set forth in paragraphs above as though fully set forth herein.

50.    Evolve and Synapse conspired and agreed to commit fraud.

51.    In furtherance of the conspiracy, among other things, Evolve and Synapse (a) made the misrepresentations set forth above, (b) misrepresented Customer users' account balances on an essentially continuous basis, (c) misrepresented the transactions that had occurred in end user accounts, as funds had secretly been misappropriated, and (d) misappropriated end user funds.

52.    Evolve's misconduct and misappropriation injured Plaintiff and the Class.

53.     Defendant's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Plaintiff, entitling Plaintiff to punitive damages.

54.     Accordingly, the Court should award damages against Defendant for fraud in an amount to be proven at trial.

## COUNT THREE

## NEGLIGENT MISREPRESENTATION

### (*Against the Evolve Defendants Only*)

55.     Plaintiff repeats and realleges the allegations set forth in paragraphs above as though fully set forth herein.

56.     Defendant owed a duty of care to Plaintiff, to use reasonable care to protect, to secure its customer's funds and to provide access to those monies, to use reasonable care in providing to Plaintiff and its customers.

57.     Defendant had full knowledge of the types of harm that Plaintiff and its customers could and would suffer if failed to act in accordance with its duty.

58.     Defendant made negligent representations of fact to Plaintiff, including:

- Essentially continuous representations, from 2020 to May 11, 2024 that each and every transaction that Evolve effected was being reported to Affiliate and its end users on an essentially real-time basis;

- Essentially continuous representations, from 2020 to May 11, 2024 as to the essentially real-time account balances of Affiliate customers;

- Bi-weekly oral representations, from late 2022 to early 2023 delivered by Evolve employees at Compliance Check-in meetings that there were no serious compliance issues or risk management problems impacting the availability of Affiliate user funds;

- Written representations, delivered via email on September 24, 2020 that Evolve "[e]nsures clients meet regulatory, compliance and risk mitigation

requirements for all solutions," that Evolve "enforce[s] federally mandated regulations," and that its technology team "[t]ediously test[s] and analyze[s] solutions before going live;"

- Written representations, posted on the Evolve website that Evolve's systems are "highly secure" and that user "data is stored, and money is transferred at the highest industry standard set by the Federal Reserve;"

- Oral representations by Evolve's Chairman Scot Lenoir on or about September 24, 2020, April 13, 2021, August 24, 2021, October 24, 2022, December 7, 2022, that Evolve had the organizational and technical ability to safeguard user funds;

- Written representations by Hank Word, Evolve's President of Open Banking on or about September 25, 2023 that problems with Synapse were merely the result of "some contractual issues with Synapse" that were "being handled" in a manner that would "protect end users;"

- Written representations by Lenoir, on or about October 3, 2023, that problems with Synapse were merely the result of "some contractual issues with Synapse," and that Affiliate could "transition to another bank" should it or its users desire to do so;

- Written representations by Evolve's outside counsel, Jeffrey P. Naimon of Orrick, Herrington & Sutcliffe LLP on or about November 2, 2023, that problems with Synapse were merely the result of "contractual disagreement that has occurred between Evolve and Synapse Financial Technologies, Inc." that could plausibly be resolved "in the next few weeks;"

- Evolve's written representation on or about May 11, 2014 that it was "maintain[ing] the integrity and security of end user accounts."

- Evolve's May 11, 2023 draft customer agreement's representation that customers could withdraw funds that they had deposited into their accounts.

59.    These representations were material.

60.    Defendant knew that Plaintiff and its customers to rely upon these representations and intended for them to do so.

61.    These representations were material and Plaintiff relied on them. Plaintiff would not have agreed to use Plaintiff as a banking partner or recommend that its customers entrust their assets to Plaintiff absent these representations.

62.    These representations were false. In truth:

- The supposedly comprehensive continuous reporting of transactions transmitted by Evolve to Affiliate were false, as funds had secretly been misappropriated;

- The account balances were false and Affiliate user funds were not genuinely accounted for and available from Evolve;

- There were serious compliance issues and risk management problems impacting the availability of Affiliate user funds;

- Evolve did not have the organizational and technical ability to safeguard user funds;

- Evolve did not ensure that its clients met regulatory, compliance and risk mitigation requirements for all solutions, did not enforce federally mandated regulations and its technology team did not tediously test and analyze solutions before going live;

- Evolve's systems were not highly secure, user data was not stored, and money was not transferred at the highest industry standard set by the Federal Reserve;

- The problems with Synapse that impacted availability of interest payments in September of 2023 were not the result of a "contractual disagreement,"

made it impossible for users to "transition to another bank" and could not possibly be "resolved in a few weeks."

63.     To the extent any of Evolve's representations were not literally false, they were materially misleading and incomplete in light of Evolve's prior statements and Evolve had a duty to correct them and/or not to use them to perpetrate a fraud by omission.

64.     Evolve lacked reasonable grounds for believing that its representations were true and failed to exercise reasonable care in ascertaining whether the representations were accurate.

65.     If Plaintiff had known that Defendant was a dishonest and incompetent bank that could not perform the most basic job of a financial institution (i.e. keeping track of customer money) it would have immediately ceased all business with Defendant and taken steps to ensure that customer funds were immediately returned.

66.     Plaintiff has been damaged by Defendant's false representations.

67.     Defendant's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Plaintiff, entitling Plaintiff to punitive damages.

68.     Accordingly, the Court should award damages against Defendant for fraud in an amount to be proven at trial.

## FOURTH CLAIM FOR RELIEF

### Avoidance and Recovery of Constructively Fraudulent Transfers

### (*Against all Defendants*)

69.     Plaintiff hereby refers to and incorporates by reference each and every allegation contained in the preceding paragraphs.

70.     The Defendants have sold, absconded with, and transferred customer deposit funds to other parties including other banks, insiders, favored depositors, without paying the Class ("Transfers").

71.     At all times material hereto, the Evolve Defendants: (a) were insolvent

on the dates the Transfers were made or became insolvent as a result of the transfers, and/or (b) was engaged in businesses or transactions, or were about to engage in businesses or transactions, for which the property remaining with the Defendants after the Transfers was effectuated constituted unreasonably small capital, and/or (c) at the time of the Transfers, intended to incur, or believed that they would incur, debts that would be beyond their ability to pay as the debts matured.

72. The Evolve Defendants did not receive reasonably equivalent value in exchange for the Transfers.

73. The Transfers were made to or for the benefit of Defendants.

74. As a result of the foregoing, Plaintiffs are entitled to judgment: (a) avoiding and preserving the Transfers free and clear from any claimed interest of the Defendants or third parties, (b) directing that the Transfers be set aside, and (c) recovering the transfers or the value thereof from Defendants, (d) disallowance of any claim or right in equity otherwise.

## **FIFTH CAUSE OF ACTION FOR CONVERSION**

### **(Against All Defendants)**

75. Plaintiff hereby refers to and incorporates by reference each and every allegation contained in the preceding paragraphs.

76. Plaintiff and the Class provided hundreds of millions of dollars to the Defendants in customer deposits.

77. The Defendants have intentionally taken possession of, transferred, and/or prevented Plaintiff from having access to deposits.

78. In addition, the Defendants converted deposits to their exclusive use without using any of the proceeds therefrom to earmark amounts for customer deposits.

79. Plaintiff did not consent to Defendants' actions.

80. Defendants' actions were willful and malicious in that they did not intend to pay Plaintiff customer deposits, and instead intended to use the deposits willfully and maliciously to harm Plaintiff.

81.    As a result of Defendants' conversion, Plaintiff and the Class have suffered damages and are unable to receive their deposits, and their deposits are potentially tied up.

82.    The Defendants' conduct was a substantial factor in causing Plaintiff's harm.

83.    The aforementioned conduct was intentional on the part of the Defendants, to thereby deprive Plaintiff of property and legal rights and otherwise cause injury and was despicable conduct that subjected Plaintiff to cruel and unjust hardship and oppression in conscious disregard of its rights, so as to justify an award of exemplary and punitive damages.

## SIXTH  CAUSE OF ACTION

### (VIOLATION OF PENAL CODE § 496)

### (Against All Defendants)

84.    Plaintiff realleges and incorporates by reference the matters alleged in the foregoing paragraphs of this Complaint as if fully set forth herein.

85.    Up and through 2023, Plaintiff and the Class made deposits with the Defendants.

86.    The relief under Cal. Penal Code is available pursuant to Cal. Penal Code § 496 and *Siry Investment, L.P. v. Farkhondehpour*, 13 Cal.5th 333 (2022).

87.    Where one, through mistake or fraud receives money to which he is not entitled, he becomes the trustee of that money for the benefit of the one justly entitled to it. (Cal. Civ. Code § 2224.) In the course of, and by virtue of the above-averred acts, the Defendants at the authorization, direction, and/or with the participation of Evolve, fraudulently converted and used the Plaintiff's fund for their own use, and exclusive benefit and with the intent to deprive Plaintiff and the Class of his use of the monies.

88.    One who fraudulently appropriates property which has been entrusted to him is guilty of theft. (Cal. Pen. Code § 484.)

89.     The Defendant made representations that deposit funds were safe and secure.

90.     The representations were made by Defendants, and were represented as true when in fact they were false.  The Defendants did not intend to credit or remit payments on account of the deposits.

91.     Defendant knew that the foregoing material representations were false at the time they were made, and/or made these material representations recklessly and without regard for the truth.

92.     Defendants' respective (false) representations and deception by concealment were made specifically for the purpose of inducing Plaintiff and the Class to rely on them, to wit (and without limitation), to induce them to provide the Defendant with deposit funds. Specifically, Plaintiff relied on the Defendants' statements by providing money pursuant to the Option Contract.

93.     Plaintiff did in fact reasonably rely on Defendant's representations and deception, by engaging in the aforementioned actions and omissions.

94.     As a proximate result of each of the Defendant's fraudulent and deceitful actions, Plaintiff has suffered damages in an amount to be established at trial, but believed to exceed $100,000,000, plus trebled damages and attorney's fees that have accrued.

95.     Plaintiff's reliance on Defendants' (false) representations and deception was a substantial factor in causing him harm.  The aforementioned conduct was intentional on the part of the Defendant, to thereby deprive Plaintiff of property and legal rights and otherwise cause injury and was despicable conduct that subjected Plaintiff to cruel and unjust hardship and oppression in conscious disregard of its rights, so as to justify an award of exemplary and punitive damages.

## SEVENTH CAUSE OF ACTION
## MONEY HAD AND RECEIVED

(Against all Defendants)

96.     Plaintiffs restate the preceding allegations as if set forth herein.

97.    Plaintiffs and the Class each registered accounts on one or more platforms that contracted with and utilized Synapse's services.

98.    Plaintiffs and the Class each deposited funds at one or more of the platforms through which they are connected.

99.    The Bank Defendants and Evolve had in their possession funds belonging to Plaintiffs and the Class. Plaintiffs and the Class are the owners, and entitled to possession, of their respective funds deposited at the Bank Defendants.

100.    The Bank Defendants and Evolve have not returned the funds belonging to Plaintiffs and the Class in full.

101.    The Bank Defendants and Evolve have refused access to the funds belonging to Plaintiffs and the Class.

102.    Accordingly, as more fully set forth above, Defendants had in their possession money which in equity and good conscience belongs to Plaintiffs and proposed class members. That money should be refunded to Plaintiffs and proposed class members.

## EIGHTH CAUSE OF ACTION
## UNJUST ENRICHMENT
### (Against all Defendants)

103.    Plaintiffs restate the preceding allegations as if set forth herein.

104.    Plaintiffs and the Class each registered accounts on one or more platforms that contracted with and utilized Synapse's services.

105.    Plaintiffs and the Class each deposited funds at one or more of the Bank Defendants and/or Evolve through the Platforms.

106.    The Bank Defendants and/or Evolve had in their possession funds belonging to Plaintiffs and the Class.

107.    The Bank Defendants and/or Evolve have not returned the funds belonging to Plaintiffs and the Class in full.

108.    The Bank Defendants have been unjustly enriched in retraining the cash deposits belonging to Plaintiffs and the Class.

109.   The Bank Defendants have also been unjustly enriched by accruing interest  and deriving profits from the unauthorized use of Plaintiffs' and the Class's funds.

110.   The Bank Defendants' retention of this money under the circumstances is unjust and inequitable.

111.   As a direct and proximate result of Defendants' misconduct, Plaintiffs and  the Class are entitled to restitution and disgorgement in an amount to be proven at trial.

## NINTH CAUSE OF ACTION
## NEGLIGENCE
(Against all Defendants)

112.   Plaintiffs restate the preceding allegations as if set forth herein.

113.   Plaintiffs and the Bank Defendants have a special relationship that gives rise to the Bank Defendants' duties to Plaintiffs and Class Members to act reasonably to (a) hold cash deposits for Plaintiffs' and the Class's benefit; (b) allow Plaintiffs and the Class to access their cash deposits on demand and/or with reasonable notice; (c) protect Plaintiffs and the Class from unreasonable interference with their right and ability to access their funds; and (d) employ commercially adequate practices and procedures regarding the accounting and tracking of such funds.

114.   The Bank Defendants each breached its duty to Plaintiffs and the Class by  failing to maintain and hold cash deposits, failing to accurately account for cash deposits, and denying access to cash deposits without cause.

115.   The harms inflicted upon Plaintiffs and Class members were reasonably foreseeable. The Bank Defendants were aware that consumers relied upon financial institutions to store and safeguard cash deposits, and provide prompt access to cash deposits.

116.   The Bank Defendants were also aware that the failure to provide access to cash deposits was likely to result in harm above and beyond the amount of the

account balance, including the inability to satisfy other debts and pay for necessities of life.

117.    As a direct and proximate result of the Bank Defendants' failures described herein, Plaintiffs and the Class have been deprived of their cash deposits, access to cash deposits, accrued interest thereon.

118.    Plaintiffs and the Class have also suffered emotional distress, anxiety, and  fear upon being notified that their accounts were frozen and cash balances inaccessible and/or misplaced.

119.    Plaintiffs, on behalf of themselves and the Class seek, damages and interest thereon in an amount to be proven at trial.

## TENTH CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTY
### (Against all Defendants)

120.     Plaintiffs restate the preceding allegations as if set forth herein.

121.    As the custodian of funds, Defendants owed a fiduciary duty to Plaintiffs  and the Class to store, maintain, and safeguard their cash deposits. Defendants were obligated to hold cash deposits for the benefit of Plaintiffs and the Class, and would not sell, loan, or otherwise alienate such funds except as instructed by Plaintiffs and the Class.

122.    Defendants also owed a fiduciary duty to provide access to cash deposits  and return cash deposits upon reasonable demand.

123.    Plaintiffs and the Class entrusted the Bank Defendants to ensure the safekeeping of their assets and to provide them with access to and control over their accounts and the assets within those accounts.

124.    As alleged above, Defendants breached their fiduciary duties to Plaintiffs and the Class. Defendants failed to store, maintain, and safeguard Plaintiffs' and the Class's cash deposits. Defendants failed to employ reasonable

measures to verify the accuracy and amount of account balances. Defendants failed to properly account for, provide access to, or timely return these funds.

125.   As a result of the foregoing actions of Defendants, Plaintiffs and the Class have been damaged in an amount to be proven at trial. Plaintiffs seek all available remedies including general damages, special damages, punitive damages, injunctive relief, attorneys' fees, and costs.

## ELEVENTH CAUSE OF ACTION
## ACCOUNTING
### (Against all Defendants)

126.   Plaintiffs restate the preceding allegations as if set forth herein.

127.   Plaintiffs and the Class each registered accounts on one or more Platforms that contracted with and utilized Synapse's services. Plaintiffs and the Class each deposited funds at one or more of the Bank Defendants through the platforms.

128.   The Bank Defendants had in their possession funds belonging to Plaintiffs and the Class.

129.   The Bank Defendants have not returned the funds belonging to Plaintiffs and the Class in full.

130.   The Bank Defendants have not provided access to the funds belonging to Plaintiffs and the Class.

131.   The Bank Defendants have failed to provide an accounting and/or sufficient information and documentation concerning the amount and location of Plaintiffs' and the Class's funds.

132.   Plaintiffs and the Class are entitled to accounting as it pertains to the amount and location of their funds.

133.   A remedy at law is inadequate because, without an accounting, Plaintiffs and the Class are unable to verify the extent of damage incurred as a result of Defendants' wrongdoing.

## TWELFTH CAUSE OF ACTION

## CONSTRUCTIVE TRUST

### (Against all Defendants)

134.    Plaintiffs restate the preceding allegations as if set forth herein.

135.    Plaintiffs and the Class each registered accounts on one or more Platforms that contracted with and utilized Synapse's services.

136.    Plaintiffs and the Class each deposited funds at one or more of the Bank Defendants through the Platforms.

137.    The Bank Defendants had in their possession funds belonging to Plaintiffs and the Class.

138.    The Bank Defendants have not returned the funds belonging to Plaintiffs and the Class in full.

139.    Equity and justice require that the Bank Defendants be deemed to hold these funds in constructive trust for Plaintiffs and the Class.

140.    Plaintiffs and the Class are entitled to imposition of a constructive trust upon any accounts held by the Bank Defendants which contain funds belonging to Plaintiffs and the Class.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff prays that this Court:

A.    Certification of this case as a class action on behalf of the proposed Class and any subclasses defined above or as amended, appointment of Plaintiffs as Class representative, and appointment of their counsel as Class counsel;

B.    An award to Plaintiffs and the proposed Class and any subclasses of restitution, statutory, and/or other equitable relief, including, without limitation, restitutionary disgorgement;

C.    An injunction ordering Defendants to cease the business practices complained of herein;

D.    An injunction and declaration barring Evolve from being a custodian of customers' funds;

PLAINTIFFS' CLASS ACTION COMPLAINT

E.      An award of all economic, monetary, actual, consequential, and compensatory damages caused by Defendants' conduct;

F.      An award of nominal, punitive, exemplary, trebled, and statutory damages where available;

G.      Reasonable expenses and attorneys' fees;

H.      Appointment of a receiver, custodian, or trustee;

I.      Provide an accounting as to all the amounts owed to the Class;

J.      Provide an accounting as to all outstanding custodial obligations, liabilities, and assets;

K.      Pre- and post-judgment interest, to the extent allowable; and

L.      For such further relief that the Court may deem just and proper.

Date:    November 27, 2024

LINDEMANN LAW FIRM, APC
BLAKE J. LINDEMANN

By:  /s/ *Blake J. Lindemann*
Blake J. Lindemann

*Attorneys for Plaintiff Ashley Felton and the Proposed Classes*